**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

PEDRO PABLO AGUILAR,  *

      Plaintiff,  *

      v.  *  Civil Action No. AW-05-1232

PRINCE GEORGE'S COUNTY, MD, *et al.*,*

      Defendants.  *

\* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Pedro Pablo Aguilar ("Aguilar" or "Plaintiff") brings this action against Defendant Prince George's County, Maryland (the "County" or "Defendant"), alleging that Defendant violated his rights under 42 U.S.C. § 1983. Currently pending before the Court is the County's Motion for Summary Judgment [25]. For the reasons set forth more fully below, this Court will GRANT the County's Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

This Court has recounted many of the facts of this case in its January 5, 2006 Order. The following represents the pertinent facts taken in the light most favorable to the non-movant. On April 6, 2002, Plaintiff, along with some friends, went to dine at Julito's Restaurant in Hyattsville, Maryland. During the course of the evening, County Police Officer Vargas ("Officer Vargas") requested that one of Plaintiff's friends leave the restaurant following an altercation between Plaintiff's friend and another patron. Unaware of this incident, Plaintiff asked a security guard at Julito's why his friend was asked to leave the restaurant. Plaintiff alleges that this security guard refused to answer his questions. Then, another security guard approached Plaintiff and the first security guard. When Plaintiff again asked why his friend was removed from the restaurant, one of

the security guards placed him in a choke hold. "Officer Vargas" then came over to Plaintiff and the two security guards and proceeded to grab Plaintiff's arm and assist the security guards in taking Plaintiff out of the restaurant. Pl.'s Depo. at 39-40. After dragging Plaintiff out of Julito's, "Officer Vargas" and the security guards threw Plaintiff into a flight of stairs "with such force and violence that Plaintiff sustained a hip fracture." Compl. ¶ 12; *see also* Pl.'s Depo. at 40. The County, however, has produced evidence, by way of an affidavit, which indicates that the Prince George's County Police Department did not have any officer by the last name of Vargas working on April 6, 2002 or the following day April 7, 2002. Aff. Raymond Gheen ¶ 4.

On March 30, 2005, Plaintiff filed a Complaint against Officer Vargas, County Police Officer Melvin C. High ("Officer High"), and the County in the Circuit Court for Prince George's County, Maryland. Defendants filed Notice of Removal to this Court on May 5, 2005.

This Court dismissed Officer Vargas and Officer High as Defendants in this suit after Plaintiff failed to serve them in the time designated by Rule 4(m) of the Federal Rules of Civil Procedure. This Court issued a Scheduling Order for this case on October 7, 2005. In accordance with the Scheduling Order, as amended, the County filed a Motion for Summary Judgment on March 20, 2006. On April 9, 2006, Plaintiff filed a Consent Motion for Extension of Time to respond to Defendant's Motion, extending the response deadline to April 27, 2006. As of May 1, 2006, Plaintiff has not filed a response to the Motion for Summary Judgment. Consequently, this Motion is ripe and ready for disposition.

**STANDARD OF REVIEW**

Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323-25 (1986).  In a motion for summary judgment, the moving party discharges its burden by showing an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325.  The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted).  To defeat a motion for summary judgment, the non-moving party must come forward and show that a genuine issue of material fact exists.  *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences.  *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## **ANALYSIS**

As Defendants Vargas and High have been dismissed, the only viable claim against Defendant County is Plaintiff's allegation of a 42 U.S.C. § 1983[1] *Monell* violation.

Although the Supreme Court has held that a municipality is an individual for the purposes of Section 1983 in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658

---

[1] Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

(1978), the Court emphasized that:

> a municipality cannot be held liable *solely* because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.
>
> . . .
>
> [T]herefore, . . . a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 691, 694 (emphasis in original). Plaintiff does not allege that the County physically deprived him of any of his constitutional rights, but that one of its officers assaulted him. Because this Court may not impose vicarious liability under Section 1983, Plaintiff needs to prove two elements to succeed in his Section 1983 claim against the County. First, Plaintiff must establish the existence of a constitutional violation by a person acting under the color of law, and, second, Plaintiff must show that those who inflicted the injury acted pursuant to the County's policy or custom. *See Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised"); *Dawson v. Prince George's County*, 896 F. Supp. 537, 540 (D. Md. 1995) (Plaintiff's "claims against the County hinge on his ability to show that [an] 'active' Defendant . . . violated his constitutional rights"); *Marryshow v. Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991) (same).

Plaintiff has not demonstrated that either precondition has been met. As a threshold matter,

even if one assumes that Vargas violated Plaintiff's Fourth Amendment rights,[2] the evidence does not reflect that Vargas acted "under the color" of law.  In *United States v. Classic*, 313 U.S. 299 (1941), the Supreme Court, interpreting the criminal counterpart to Section 1983, clarified that a state need not have explicitly authorized a person's actions for the person to act "under the color" of law. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *Id.* at 326. The Court revisited this issue just four years later in *Screws v. United States*, 325 U.S. 91 (1945), in which it explained that "It is clear that under 'color' of law means under 'pretense' of law.  Thus acts of officers in the ambit of their personal pursuits are plainly excluded.  Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Id.* at 111.

Relying on this distinction, the Fourth Circuit held in *Robinson v. Davis,* 447 F.2d 753, 759 (4th Cir. 1971), that even an off-duty municipal officer wearing police garb is not necessarily clothed with the authority of state law.  In that case, several of the defendants were police officers and also worked part-time as security guards for a university.  Although these defendants wore police uniforms when they requested that Plaintiff appear at a hearing and supervised him while waiting to meet with university officials, the *Robinson* court found that the district court properly dismissed the plaintiff's Section 1983 suit, as the defendant police officers were acting on behalf of the university at the time of the the incidents complained of. *Id.* at 759.

---

[2] The Supreme Court has made clear that a constitutional violation related to the arrest or seizure of a person must be analyzed under the Fourth Amendment. *See, e.g.*, *Graham v. Conner*, 490 U.S. 386, 395 (1989) (holding that Section 1983 claim for excessive force is an allegation of a Fourth Amendment violation not a Fourteenth Amendment violation).

In many respects, this case resembles *Robinson*, and here, as in *Robinson*, Plaintiff has not presented evidence of state action. County records show that no "Officer Vargas" was on duty either the night of April 6 or of April 7, 2002. Plaintiff's deposition testimony also demonstrates that even Plaintiff did not believe that Vargas was performing his duties in his official capacity. When asked by Defendant's attorney:

> Okay. The police officer who was one of the people who threw you out, is it your understanding that he was working at the club as security?

Plaintiff answered, "Yes." Pl.'s Dep. at 55. Apart from Vargas' uniform, no other facts support Plaintiff's assertion that Vargas acted as anything other than a security guard for Julito's when Vargas allegedly forcibly removed Plaintiff from the restaurant.

In the alternative, this Court finds that even if Vargas was acting under the color of law, the facts do not establish that Vargas acted pursuant to the County's policies or customs. The Complaint alleges that the County failed to train or supervise Vargas and that it authorized his acts. The manner in which a municipality chooses to train its police force is "necessarily a matter of policy." *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987). Section 1983 liability may attach if officers are not adequately trained "in relation to the tasks the particular officers must perform." *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003) (citing *Canton v. Harris*, 489 U.S. 378, 390-91 (1989)). To date, Plaintiff has not directed this Court to any testamentary or documentary evidence that would tend to show that the County instructed its officers to use excessive force while performing their duties. Nor has Plaintiff shown that the County authorized Vargas' acts. To the contrary, in response to Defendant's interrogatories, Plaintiff admitted that he had no information to support his contention that Vargas and other County officers were improperly trained or supervised. *See* Def.'s Ex. 3, at

6

4-5. In fact, Plaintiff's only "evidence" of improper training are the allegations contained in the Complaint. It is well settled that such bald accusations prove insufficient to sustain a plaintiff's burden on a motion for summary judgment. *See Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir. 1990) (holding that party may not rest upon mere allegations or denials of his pleadings to oppose a motion for summary judgment).

Therefore, because Plaintiff has not offered any evidence that Vargas acted in his capacity as a County officer and or that would demonstrate a nexus between a County policy or custom and the constitutional harm he alleges, Defendant is entitled to summary judgment on Plaintiff's *Monell* claim.

## **CONCLUSION**

Therefore, for the aforementioned reasons, Defendants' Motion for Summary Judgment is granted. A separate Order shall follow.

Date:  May 2, 2006                                              /s/
                                                                Alexander Williams, Jr.
                                                                United States District Court